UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JARRELL D. CURNE,

*Plaintiff*,

- against -

THE ORCHARD ENTERPRISES NY, INC., SPOTIFY USA INC., TESLA, INC., TIDAL MUSIC LLC, UNIVERSAL MUSIC GROUP N.V., SONY MUSIC ENTERTAINMENT, APPLE INC., GOOGLE LLC, HOST BABY, CD BABY, WARNER MUSIC GROUP CORP., DISTROKID LLC, TUNECORE, INC., AWAL, SYMPHONIC DISTRIBUTION, INC., AA LIBERTY, NAVAAR, AMAZON.COM SERVICES LLC, DEEZER S.A., SOUNDCLOUD GLOBAL LIMITED, TIKTOK INC., VIMEO, INC., YOUTUBE LLC, AUDIOMACK, INC., SONGTRUST, SOUNDEXCHANGE, INC., ASCAP, ANGHAMI, NAPSTER, PANDORA MEDIA, LLC, IHEARTRADIO, EMPIRE DISTRIBUTION, INC., INGROOVES MUSIC GROUP, ATLANTIC RECORDING CORP., and FISHER ZUCKER LLC,

*Defendants*.

No. 26 Civ. 5451 (VSB) (JW)

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS ORCHARD ENTERPRISES NY, INC. AND PANDORA MEDIA, LLC

Cynthia S. Arato
Shapiro Arato Bach LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4882
carato@shapiroarato.com

*Counsel for Defendants Orchard Enterprises NY, Inc. (erroneously sued as The Orchard Enterprises NY, Inc.) and Pandora Media, LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

ALLEGATIONS OF THE COMPLAINT .......... 3

A. Orchard's Alleged Breach .......... 3

B. The Alleged Infringement .......... 5

ARGUMENT .......... 5

I. CURNE'S CONTRACT CLAIM AGAINST ORCHARD FAILS AS A MATTER OF LAW .......... 6

A. Paperkidd Is a Necessary Party .......... 6

B. Curne Fails to Plausibly Allege a Breach .......... 7

II. CURNE'S COPYRIGHT INFRINGEMENT CLAIMS AGAINST ORCHARD AND PANDORA MUST BE DISMISSED .......... 9

A. Curne's Copyright Claims Fail Under Rule 8 .......... 9

B. Curne Fails to State a Copyright Claim Against Orchard for Additional Reasons .......... 11

C. Curne Fails to State a Copyright Claim Against Pandora for Additional Reasons .......... 13

CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6

*BYD Co. Ltd. v. VICE Media LLC*,
531 F. Supp. 3d 810 (S.D.N.Y. 2021) .......... 8

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .......... 4

*Cole v. John Wiley & Sons, Inc.*,
No. 11-cv-2090-DF, 2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012) .......... 10, 12

*Cortner v. Israel*,
732 F.2d 267 (2d Cir. 1984) .......... 10

*Curne v. Liberty Mut. Ins. Co.*,
No. 21-cv-02192-EFM-JPO, 2021 WL 4243123 (D. Kan. Sept. 17, 2021) .......... 1

*Curne v. Winred*,
No. 26-cv-1814-LMB-LRV, 2026 WL 2031941 (E.D. Va. July 8, 2026) .......... 1

*DiMaggio v. Int'l Sports Ltd.*,
No. 97-cv-7767-HB, 1998 WL 549690 (S.D.N.Y. Aug. 31, 1998) .......... 10

*E&T Skyline Constr., LLC v. Talisman Cas. Ins. Co., LLC*,
No. 19-cv-08069-AT-SN, 2020 WL 6531108 (S.D.N.Y. July 30, 2020) .......... 6

*Eisenberger v. Friedman*,
No. 22-cv-3025-NSR, 2025 WL 2084429 (S.D.N.Y. July 23, 2025) .......... 7

*Energy Intel. Grp., Inc. v. Jefferies, LLC*,
101 F. Supp. 3d 332 (S.D.N.Y. 2015) .......... 9, 11

*Escamilla v. M2 Tech.*,
No. 11-cv-516-RAS-DDB, 2012 WL 4506081 (E.D. Tex. July 6, 2012) .......... 7

*Harris v. Simon & Schuster, Inc.*,
646 F. Supp. 2d 622 (S.D.N.Y. 2009) .......... 10

*HK Kolmar USA, LLC v. Wormser Corp.*,
No. 24-cv-9144-GWG, 2026 WL 2481936 (S.D.N.Y. Aug. 25, 2026) .......... 8

*In re Frontier Commc'ns Corp.*,
658 B.R. 277 (Bankr. S.D.N.Y. 2024) .......... 13

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
413 F.3d 257 (2d Cir. 2005) .......... 5

*Jackson v. Warner Music Grp. Corp.*,
No. 23-cv-10100-LTS, 2024 WL 98290 (S.D.N.Y. Jan. 8, 2024) .......... 5

*Kelly v. L.L. Cool J.*,
145 F.R.D. 32 (S.D.N.Y. 1992) .......... 9

*Lepore v. NL Brand Holdings LLC*,
No. 16-cv-08115-GBD, 2017 WL 4712633 (S.D.N.Y. Sept. 28, 2017) .......... 13

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
602 F.3d 57 (2d Cir. 2010) .......... 6

*Pridgen v. Andresen*,
113 F.3d 391 (2d Cir. 1997) .......... 7

*Spinelli v. Nat'l Football League*,
96 F. Supp. 3d 81 (S.D.N.Y. 2015) .......... 11

*Spinelli v. Nat'l Football League*,
903 F.3d 185 (2d Cir. 2018) .......... 12

*Triestman v. Fed. Bureau of Prisons*,
470 F.3d 471 (2d Cir. 2006) .......... 5

*United States v. Liberty Mut. INS. Co.*,
No. 15-cv-4961-LTS, 2016 WL 6464481 (S.D.N.Y. Nov. 1, 2016) .......... 9

*William A. Gross Const. Assocs., Inc. v. Am. Manufacturers Mut. Ins. Co.*,
No. 07-cv-10639-LAK-AJP, 2009 WL 427280 (S.D.N.Y. Feb. 23, 2009) .......... 7

**Statutes**

17 U.S.C. § 106 .......... 14

**Rules**

Fed. R. Civ. P. 8 .......... 9

Fed. R. Civ. P. 12 .......... 1

Fed. R. Civ. P. 19 .......... 6

Defendants Orchard Enterprises NY, Inc. and Pandora Media, LLC respectfully submit this memorandum of law in support of their motion to dismiss the Complaint under Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

*Pro se* Plaintiff Jarrell D. Curne is a recording artist currently serving a sentence for Covid-19 related fraud at the Federal Correctional Institution in Leavenworth, Kansas. Several weeks after his May 2026 sentencing, Curne filed a rambling, disjointed Complaint against 35 named defendants for breach of contract and/or copyright infringement.[1] Those defendants include the moving parties here: Orchard, a global music distribution company and party to a digital distribution agreement with Curne, and Pandora, a music streaming and internet radio service that allegedly offered certain of Curne's works to its subscribers.

Curne fails to plead any viable contract claim against Orchard. As a preliminary matter, although Curne's company, Paperkidd Productions & Publishing, LLC, is a party to the distribution agreement over which Curne sues, Curne fails to include Paperkidd as a plaintiff in this action, presumably because Curne is appearing *pro se* and does not want to incur the expense

---

[1] At least two federal district courts have identified Curne as a vexatious litigant. In *Curne v. Liberty Mut. Ins. Co.*, No. 21-cv-02192-EFM-JPO, 2021 WL 4243123 (D. Kan. Sept. 17, 2021), the District Court in Kansas imposed filing restrictions on Curne after finding that his litigation history was "duplicative, harassing, and vexatious." *Id.* at *3. Among other things, the court found that Curne (1) had a history of filing duplicative lawsuits against the defendant in that case, including many that have been dismissed; (2) "filed at least twenty motions" in the instant case with "most lacking any basis in law and failing to comply with the Federal Rules of Civil Procedure"; (3) made "frivolous threats of legal action against employees of [the] Court"; and (4) "is aware of the vexatious nature of his claims and intentionally uses the court system for harassment and intimidation." *Id.* at *2-3. Another district court in Virginia recently described Curne as a "vexatious litigant who has filed several complaints in various federal district courts," identifying several that had been dismissed for failure to state a claim or lack of subject matter jurisdiction. *Curne v. Winred*, No. 26-cv-1814-LMB-LRV, 2026 WL 2031941, at *1 n.1 (E.D. Va. July 8, 2026).

of engaging counsel to represent his company. But as a party to the contract over which Curne sues, Paperkidd is a necessary party that must be joined for this action to proceed. The Court should thus dismiss Curne's breach of contract claim if Curne refuses to engage counsel to represent Paperkidd.

The Court should also dismiss Curne's contract claim because Curne fails to plausibly allege any breach. Curne complains that Orchard omitted certain metadata regarding *other* artists' alleged contributions to Curne's recordings when distributing Curne's works to various digital music platforms and that the missing metadata would have fueled selection algorithms to drive consumer traffic to his works. But nothing in the parties' agreement requires Orchard to include such metadata when distributing Curne's recordings.

Curne also fails to plead any viable copyright claim against either Orchard or Pandora (or any of the other defendants) for allegedly infringing his musical works. Curne's infringement allegations are hopelessly and unworkably vague. Curne places the words direct, contributory, and vicarious infringement into his pleading, but he alleges no facts supporting any infringement claim. He fails to provide even minimal specifics about *which defendants* or third parties violated *which copyrights*, for *which of his works*, and *when* or *how* any direct or contributory infringement took place. He also complains of conduct having nothing to do with copyright, such as allegedly stripping royalty codes and diverting monetization. Moreover, although Curne alleges he is the registered owner of over 100 copyrighted works, the United States Copyright Office's Public Catalog lists only one work registered in his name, and Curne has failed to allege any facts that would allow him to sue for infringement of any other work.

The Court should dismiss Curne's Complaint in its entirety.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff Curne is a "professional recording artist, songwriter, and the Principal owner-operator of Paperkidd Productions & Publishing, LLC." Compl. ¶ 1. He "and his company, Paperkidd" entered into a "digital music distribution contract with Defendant The Orchard." *Id.* ¶ 43. Under that contract (the "Distribution Agreement"), Orchard distributed Curne/Paperkidd's sound recordings "into a global digital distribution pipeline" that "supplies downstream platforms," and those platforms "accepted, hosted, transmitted, streamed, or structurally facilitated the commercial monetization of Plaintiff's works." *Id.* ¶¶ 57-58.

To boost the commercial prospects of his "primary music project"—an album entitled "The Journey of Jarrell Curne"—Curne paid "A-list" artists known as "Boosie" and "MO3," respectively, $8,000 and $3,500 "in cash," to obtain featured verses from them to include in Curne's album. *Id.* ¶ 46. Curne apparently paid for these A-list artists' verses so he could market his album using these prominent artists' names. *Id.* ¶¶ 45-46. Specifically, Curne sought to include these artists' names in the metadata Orchard delivered to "digital streaming platforms" alongside Plaintiff's album, so these other artists' names would "trigger automated recommendation algorithms and drive consumer traffic" to his recordings and "maximize his algorithmic reach and stream monetization." *Id.*

### A. Orchard's Alleged Breach

Curne alleges that Orchard "fail[ed] to properly upload, map, and list [Plaintiff's album] and its associated artist titles" by allegedly "stripp[ing] the high-profile metadata mappings for the 'Boosie' and 'MO3' features." *Id.* ¶¶ 47-48, 77-78. According to Plaintiff, this "stripped Plaintiff of his algorithmic indexing, suppressed his music from automated recommendations,

and pushed his catalog deep down into search algorithms alongside unverified creators," thus "suppress[ing] Plaintiff's commercial viability." *Id.* ¶¶ 49, 78.

Curne contends this conduct breached the Distribution Agreement because the agreement allegedly obligates Orchard to "upload, list, and map Plaintiff's commercial music metadata—including high-profile featured artists—to digital streaming platforms to trigger automated recommendation algorithms and drive consumer traffic." *Id.* ¶ 45. Curne neither attaches the Distribution Agreement to his Complaint nor identifies any contractual provision containing this supposed obligation. The Distribution Agreement, which this Court may judicially notice as integral to the Complaint,[2] contains no such provision. *See* Distribution Agreement, attached as Exhibit A to the Declaration of Cynthia S. Arato. To the contrary, Orchard's obligations under the Agreement are only to: "(a) solicit and service the Outlets [defined to include digital service providers], (b) encode each Recording in the format(s) required by the Outlets, (c) process the delivery of the Recordings to the Outlets, … (d) collect amounts due from the Outlets" and account to and pay Paperkidd for the same. *Id.* §§ 3.01, 6.01.

Curne further contends that Orchard owes him $725.05 in unpaid royalties, but he fails to allege how or why the royalties are allegedly owed. Compl. ¶ 50. In fact, the Distribution Agreement provides that royalty balances "under one thousand dollars ($1,000)" are "rolled into the following quarter and paid only when [the] balance reaches one thousand dollars ($1,000)." Arato Decl. Ex. A § 6.01.

---

[2] *See*, *e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

### B. The Alleged Infringement

Curne also alleges he is the owner of "approximately 100" registered copyrights for individual sound recordings and musical compositions, although he does not identify any specific works apart from "The Journey of Jarrell Curne" and "Empty Dreams." Compl. ¶¶ 46, 51-52. According to the United States Copyright Office's public registry, which the Court may also judicially notice,[3] Curne and Paperkidd combined own only 14 copyrights. Arato Decl. Exs. B, C. Curne nevertheless alleges that Orchard infringed all of Curne's alleged 100 copyrighted works by allowing unauthorized third parties to "misappropriate, sample, and commercially exploit" Curne's music without proper licensing. Compl. ¶ 54. Curne further alleges that Pandora (and each of the other 30-plus defendants) displayed, transmitted, or duplicated Curne's copyrighted works without obtaining "valid mechanical licenses, synchronization clearances, or verifying a legitimate chain-of-title." *Id.* ¶ 90. The same defendants allegedly "stripped royalty tracking codes, misattributed ownership metadata, and diverted monetization away from Plaintiff." *Id.* ¶ 91.

## ARGUMENT

The Court should dismiss Curne's Complaint even under the "special solicitude" afforded *pro se* pleadings. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006). Curne fails to include Paperkidd as a plaintiff, despite Paperkidd being a party to the contract over which Curne sues; Curne lacks copyright registrations necessary to support his infringement claims, and Curne otherwise fails to allege "sufficient factual matter, accepted as true, to 'state a

[3] *See*, *e.g.*, *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005); *Jackson v. Warner Music Grp. Corp.*, No. 23-cv-10100-LTS, 2024 WL 98290, at *3 (S.D.N.Y. Jan. 8, 2024).

claim to relief that is plausible on its face.'" *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## I. CURNE'S CONTRACT CLAIM AGAINST ORCHARD FAILS AS A MATTER OF LAW

Curne's breach of contract claim against Orchard fails for two independent reasons. First, Curne fails to join Paperkidd as a plaintiff, even though, as a party to the contract at issue, Paperkidd is a necessary party who must be joined under Rule 19(a) of the Federal Rules of Civil Procedure. Second, Curne fails to plausibly allege that Orchard breached any of its obligations to Curne/Paperkidd under the Distribution Agreement.

### A. Paperkidd Is a Necessary Party

Paperkidd is a necessary party who satisfies all three conditions for mandatory joinder under Rule 19(a).

First, Paperkidd is subject to service of process, having consented to jurisdiction and venue in this Court in the Distribution Agreement to which it is a party. *See* Compl. ¶¶ 35, 39; Arato Decl. Ex. A § 10.11.

Second, Paperkidd's joinder will not deprive the Court of subject matter jurisdiction, which is premised on federal question and supplemental jurisdiction. Compl. ¶¶ 36-37.

Third, as an equal party to the Distribution Agreement along with Curne (*id.* ¶ 43), Paperkidd has "an interest relating to the subject of th[is] action" and the failure to join it would "leave [Orchard] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest," Fed. R. Civ. P. 19(a)(1)(b)(ii). It is well established that all parties to a contract are "necessary parties" because they otherwise "could bring a separate action, subjecting the obligors 'to double liability on the same claim.'" *E&T Skyline Constr., LLC v. Talisman Cas. Ins. Co., LLC*, No. 19-cv-08069-AT-SN, 2020 WL

6531108, at *9 (S.D.N.Y. July 30, 2020) (quoting *William A. Gross Const. Assocs., Inc. v. Am. Manufacturers Mut. Ins. Co.*, No. 07-cv-10639-LAK-AJP, 2009 WL 427280, at *11 n.24 (S.D.N.Y. Feb. 23, 2009)).

Curne, moreover, can easily join Paperkidd because Curne is Paperkidd's "[p]rincipal owner-operator," and fully controls the company. Compl. ¶ 1. It is, therefore, likely that Curne chose not to include Paperkidd as a plaintiff because Curne did not want to incur the expense to engage counsel to represent the company, which is the only way such an entity can prosecute its claims. *See*, *e.g.*, *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997); *Eisenberger v. Friedman*, No. 22-cv-3025-NSR, 2025 WL 2084429, at *2 (S.D.N.Y. July 23, 2025). Curne, however, "cannot both have the benefit of the corporate shield of [Paperkidd] in some dealings and avoid the inherent costs of litigation" when Paperkidd is a necessary party. *Escamilla v. M2 Tech.*, No. 11-cv-516-RAS-DDB, 2012 WL 4506081, at *4 (E.D. Tex. July 6, 2012). If Curne does not wish to engage counsel to represent Paperkidd, including if he cannot afford to do so, the Court cannot force him to do so. But Curne cannot then continue to litigate this case on his own and do an end-run around the corporate counsel requirement. If Curne is unwilling to retain counsel to represent Paperkidd, the Court should dismiss this action. *See*, *e.g.*, *id.* at *4-5 (dismissing action where *pro se* plaintiff declined to retain counsel to represent entity the Court ordered be joined as a plaintiff).

**B. Curne Fails to Plausibly Allege a Breach**

Curne also fails to plausibly allege that Orchard breached any obligations under the Distribution Agreement. Curne alleges that Orchard failed to "upload, map, and list" the metadata for some of his recordings by "stripp[ing] the high-profile metadata mappings for the 'Boosie' and 'MO3' features" (Compl. ¶¶ 47-48), which Curne claims breached some

unspecified "core material" "Algorithmic Mapping Covenants" in the agreement, *id.* ¶¶ 42, 45. The Distribution Agreement, however, contains no such covenant. Indeed, the agreement includes no provisions relating to "map[ping] commercial music metadata," "trigger[ing] automated recommendation algorithms," or "driv[ing] consumer traffic," as Curne contends. *Id.* ¶ 45, 47. At most, the Distribution Agreement requires Orchard to "encode each [r]ecording" of Curne's music "in the format(s) required" by the "Outlets" (*i.e.*, the retailers, digital service providers, and consumers) to whom Orchard distributes Curne's music. Arato Decl. Ex. A § 3.01. Curne does not allege that he provided to Orchard the specific metadata of which he complains. But even if he did, Curne does not allege that any outlet required Curne's recordings to include specific metadata or for such metadata to be uploaded in a particular way, or that Orchard failed to follow any outlet's requirements. There is simply nothing in the Distribution Agreement that touches upon Curne's allegations. The Court should therefore reject Curne's conclusory allegations to the contrary. Because the "document relied on in the complaint contradicts allegations in the complaint," and "the document, not the allegations, control[s]," the Court should reject Curne's allegations and dismiss the Complaint. *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 817 (S.D.N.Y. 2021) (cleaned up).

Finally, Curne's single sentence allegation that Orchard withheld $729.05 in royalty payments (Compl. ¶ 50) is too conclusory to be actionable because it fails to show "when and how [Orchard] breached [any] specific contractual promise." *HK Kolmar USA, LLC v. Wormser Corp.*, No. 24-cv-9144-GWG, 2026 WL 2481936, at *8 (S.D.N.Y. Aug. 25, 2026) (cleaned up). Indeed, "[a] broad, unsupported, and conclusory statement that a defendant owes more money . . . under a contract is precisely the type of 'naked assertion' of a claim that does not suffice under

*Twombly*." *United States v. Liberty Mut. INS. Co.*, No. 15-cv-4961-LTS, 2016 WL 6464481, at *1 (S.D.N.Y. Nov. 1, 2016).

The Distribution Agreement also demonstrates that any such alleged "failure" is not a breach. To the contrary, the Distribution Agreement provides that unpaid royalty balances under $1,000 are "rolled into the following quarter and paid only when [the] balance reaches one thousand dollars ($1,000)." Arato Decl. Ex. A § 6.01.

****

For each of the above reasons, the Court should dismiss Curne's contract claim.

## II. CURNE'S COPYRIGHT INFRINGEMENT CLAIMS AGAINST ORCHARD AND PANDORA MUST BE DISMISSED

Curne's copyright claims against Orchard and Pandora are hopelessly vague and confused, making it difficult to understand what conduct Curne contends infringed his copyrights and how. It is nevertheless clear that Curne's copyright claims fail as a matter of law for at least the following reasons.

### A. Curne's Copyright Claims Fail Under Rule 8

Curne's copyright claims against both Orchard and Pandora (and the remaining defendants) fail to satisfy Fed. R. Civ. P. 8 because Curne fails to allege the so-called *Kelly* factors: "(1) which specific original works are the subject of [Curne's] copyright claim, (2) that [Curne] owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts and during what time the defendant[s] infringed the copyright[s]." *Energy Intel. Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 338 (S.D.N.Y. 2015) (cleaned up); *see also Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 n.3 (S.D.N.Y. 1992) ("Rule 8 requires that the particular infringing acts be set out with some specificity.").

Curne fails to meet the first *Kelly* factor because, although he purports to sue over "approximately 100 individual sound recordings and musical compositions," he fails to identify any specific allegedly infringed works, apart from "The Journey of Jarrell Curne" and "Empty Dreams." Compl. ¶¶ 46, 51-52. Courts in this district have "repeatedly rejected" similar attempts to "base an infringement claim on overly-inclusive lists of copyrighted works" without "specify[ing] the original works that are the subject of a copyright claim." *Cole v. John Wiley & Sons, Inc.*, No. 11-cv-2090-DF, 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012) (collecting cases); *see also DiMaggio v. Int'l Sports Ltd.*, No. 97-cv-7767-HB, 1998 WL 549690, at *2 (S.D.N.Y. Aug. 31, 1998) (dismissing complaint which referred to "nebulous multiple images" and "fail[ed] to specify which original works are the subject of the copyright claim").

Curne fails to meet the second and third *Kelly* factors because, although he alleges he has copyright registrations for all of his 100-plus unspecified works (Compl. ¶ 51), the Copyright Office's public records belie that allegation. A search of those records reveals that Curne is the registered owner of just a single copyright and that Paperkidd is the registered owner of only an additional 13. Arato Decl. Exs. B, C. Curne, however, cannot sue for infringement of Paperkidd's 13 copyrighted works unless Curne is a beneficial owner of such works, namely, if he authored the works and assigned them to Paperkidd in exchange for a payment of royalties. *See, e.g.*, *Harris v. Simon & Schuster, Inc.*, 646 F. Supp. 2d 622, 632 (S.D.N.Y. 2009); *Cortner v. Israel*, 732 F.2d 267, 270-71 (2d Cir. 1984). Curne, however, fails to allege any such facts, and, accordingly, he has standing to sue for infringement of just the single copyrighted work registered in his name.

Curne, finally, fails to meet the fourth *Kelly* factor, because he fails to allege "by what acts and during what time" the alleged infringements took place. *Energy Intel. Grp.*, 101 F. Supp. 3d at 338 (cleaned up).

### B. Curne Fails to State a Copyright Claim Against Orchard for Additional Reasons

The Distribution Agreement also contradicts and defeats Curne's allegation that Orchard committed either direct or contributory copyright infringement in connection with Orchard's exploitation of Curne's works. Compl. ¶ 81. As Curne concedes, the Distribution Agreement grants Orchard a license to exploit Curne's recordings, including by distributing the works to third parties such as Pandora and the other named defendants. *Id.* ¶¶ 57-58; *see also* Arato Decl., Ex. A § 1.01(a). The Distribution Agreement provides a complete license defense to, and thus mandates the dismissal of, any copyright claim based on such conduct. *See*, *e.g.*, *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 121 (S.D.N.Y. 2015) (dismissing copyright claim because documents demonstrated defendant had a license to exploit plaintiff's copyrighted works).

Nor can Orchard be a direct or contributory copyright infringer by allegedly passively "permit[ing] unauthorized third-party artists to misappropriate, sample, and commercially exploit Plaintiff's underlying musical works without licensing or authorization" and "failing to issue required digital takedown notices or deploy administrative protections to safeguard Plaintiff's catalog from ongoing exploitation," despite receiving notifications from Plaintiff. Compl. ¶¶ 54, 85. By this allegation, Curne apparently complains that Orchard failed to police and halt third-party infringement *unrelated* to Orchard's exploitation activities—possibly where someone else posted an unauthorized copy of a Curne recording or included a portion of such recording in the

third-party's work, without Curne's consent.[4] But the Distribution Agreement does not require Orchard to police or stop such third-party infringement. *See* Arato Decl., Ex. A. Even if the Distribution Agreement imposed that obligation on Orchard, Orchard's supposed failure to fulfill such obligation would not constitute direct copyright infringement, because such omissions do not constitute "infringement of the copyright by the defendant," as opposed to by a third party. *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (cleaned up).

The alleged omissions also cannot support any contributory infringement claim because Curne has failed to plausibly allege (1) the supposed direct infringement by a third-party to which Orchard allegedly contributed; and (2) that Orchard intentionally induced or encouraged any third-party to commit any direct infringement. On the first point, Curne fails to identify any third-party or allege how they allegedly directly infringed his supposed copyrights (Compl. ¶ 54), and he cannot plausibly allege Orchard committed contributory copyright infringement where he has failed to sufficiently allege any underlying direct infringement, *Spinelli*, 903 F.3d at 197; *see also, e.g.*, *Cole*, 2012 WL 3133520, at *13 (dismissing copyright claims when complaint alleged "no detail as to any claimed infringing 'acts'").

On the second point, Curne fails to allege Orchard intentionally induced or encouraged anyone to commit any direct infringement, the *sine qua non* of a contributory infringement claim. *Spinelli*, 903 F.3d at 197. It is well established that "failure to take affirmative steps to prevent infringement," such as issuing takedown notices, "does not establish contributory

[4] In what appears to be the pot calling the kettle black, Curne complains that one digital provider took down some of Curne's recordings after receiving takedown notices which presumably notified the platform that Curne's tracks were themselves infringing. Compl. ¶ 84.

liability." *In re Frontier Commc'ns Corp.*, 658 B.R. 277, 291 (Bankr. S.D.N.Y. 2024) (cleaned up).

### C. Curne Fails to State a Copyright Claim Against Pandora for Additional Reasons

Curne fails to allege any facts supporting his sweeping claim in Count III that Pandora "directly, contributorily, or vicariously" infringed Curne's copyrights.[5] Compl. ¶ 92. Instead, Curne lumps Pandora with more than 30 other so-called "downstream" defendants and alleges, in a conclusory fashion, only that all these defendants (1) used "approximately 100 of Plaintiff's protected song titles without obtaining valid mechanical licenses, synchronization clearances, or verifying a legitimate chain-of-title" and (2) "stripped royalty tracking codes, misattributed ownership metadata, and diverted monetization away from Plaintiff." *Id.* ¶¶ 90-91. Notably, while Curne attempts to include other (still deficient) allegations regarding these other defendants, Curne alleges no additional facts regarding Pandora. *Id., passim.*

These conclusory allegations fail as a matter of law for several reasons. First, they constitute impermissible group pleading because they "lump [and] group [Pandora] together [with other named defendants and] without describing which defendant is responsible for what conduct or when each defendant participated in that unspecified conduct." *Lepore v. NL Brand Holdings LLC*, No. 16-cv-08115-GBD, 2017 WL 4712633, at *6 (S.D.N.Y. Sept. 28, 2017).

They are also unworkably vague regarding the what, when, and how of the alleged infringement. *See supra* pp. 2, 9-10. Indeed, Curne's infringement allegations against Pandora remain hopelessly confused. To the extent Curne complains that Pandora has supposedly

---

[5] While Count II is directed at "All Named Defendants," that Count is not directed at Pandora. Rather, Curne alleges facts in Count II related to Orchard and Defendant Spotify USA Inc. only. Compl. ¶¶ 81-87.

exploited sound recordings distributed by Orchard without his authorization, that allegation is foreclosed by the Distribution Agreement, under which Curne granted Orchard the exclusive right to "distribute" and "sublicense" his sound recordings to services like Pandora for those services to exploit. Arato Decl. Ex. A § 1.01(a). Curne has not explained, and cannot explain, how that legitimate activity—Orchard distributing Curne's recordings to Pandora, so that Pandora can make the recordings available to consumers—can ever be infringing. To the extent Curne complains that Pandora is distributing other recordings of Curne's which Orchard did not deliver, or third-party recordings, Curne has failed to specify any such recordings. Curne's allegations concerning allegedly "stripp[ing] royalty tracking codes, misattribut[ing] ownership metadata, and divert[ing] monetization away from Plaintiff" do not touch on the exclusive rights copyright protects (*e.g.*, distribution, reproduction, public performance, creating derivative works, etc., *see* 17 U.S.C. § 106), and thus cannot support his infringement claims.

Curne does not even bother to explain how Pandora could be secondarily liable for anyone else's alleged infringement. Other than throwing in the phrase "contributorily, or vicariously liable for" copyright infringement (Compl. ¶ 92), his pleading says nothing about these supposed torts.

Curne's allegations against Pandora are wholly inadequate under Rule 8 and fail to provide Pandora with "fair notice" of Curne's claims. Curne's infringement claims against Pandora should be dismissed.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss the Complaint in its entirety as to Orchard and Pandora.

Dated: New York, New York
November 2, 2026

/s/ Cynthia S. Arato
Cynthia S. Arato
Shapiro Arato Bach LLP
1140 Avenue of the Americas, 17th Fl.
New York, New York 10036
(212) 257-4882
carato@shapiroarato.com

*Counsel for Defendants Orchard Enterprises NY, Inc. (erroneously sued as The Orchard Enterprises NY, Inc.) and Pandora Media, LLC*